**SHARPSHOOTERS, INC., Plaintiff,**

v.

**RETIREMENT LIVING PUBLISHING CO., INC. a Foreign corporation, Defendant.**

**No. 94–1868–CIV.**

United States District Court,
S.D. Florida.

July 8, 1996.

Stanley A. Beiley, Miami, FL, Arthur J. Levine, Washington, D.C., for Defendant.

John B. Ostrow, Miami, FL, for Plaintiff.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment, filed February 1, 1996. Plaintiff filed a response on February 21, 1995. Defendant filed a reply on February 26, 1996.

Simultaneously with the filing of its response, Plaintiff sought an extension of time in which to conduct additional discovery. The Court gave Plaintiff until April 15, 1996 to continue discovery, and until May 1, 1996, to file a supplemental response. Plaintiff filed its supplemental response and accompanying deposition testimony on April 22, 1996. Defendant filed a supplemental reply on May 1, 1996.

### I. Background

At the center of this dispute is a photograph published in the June 1994 issue of Defendant's magazine, New Choices for Retirement Living ("New Choices"). The photograph, which features a husband serving his wife breakfast in bed, accompanies an essay on rekindling romance between older couples whose children have left home. Plaintiff, a stock photography house, alleges that Defendant's use of the photograph infringed a copyright held by Plaintiff. Defendant acknowledges that it contacted Plaintiff and reviewed certain photographs it offered for sale. Then, purportedly not convinced that Plaintiff's inventory contained a photograph appropriate for the mood the article

sought to convey, Defendant commissioned its own photograph.

Plaintiff brought suit under the Copyright Act, 17 U.S.C. §§ 102 *et seq.*, alleging that the photograph commissioned by Defendant (the "Ducoté photograph") was appropriated from one of the photographs it sent to Defendant for its review (the "Hall photograph").

## II. Summary Judgment Standard

In general, summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 919. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In a copyright infringement action, summary judgment is proper if the court determines that "no trier of fact could find that the two works are substantially similar." *Evans v. Wallace Berrie & Co. Inc.,* 681 F.Supp. 813, 817 n. 5 (S.D.Fla.1988) (citing *Frybarger v. Intl. Business Mach. Corp.,* 812 F.2d 525 (9th Cir.1987)).

## III. Analysis

### A. Legal Standard

In order to prevail on a claim of copyright infringement, the plaintiff must prove ownership of a valid copyright as well as unauthorized copying of the copyrighted work. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991); *Epic Metals Corp. v. Condec, Inc,* 867 F.Supp. 1009, 1012 (M.D.Fla.1994). The latter is generally established by proving that the alleged infringer had access to the protected work and that "substantial similarity" exists between the protected and copied works. *McCulloch v. Albert E. Price, Inc.,* 823 F.2d 316, 318 (9th Cir.1987).

It is undisputed that Plaintiff owns a valid copyright of the Hall photograph and that Defendant had access to the photograph. (Def.Mot. at 7.) The sole issue before the Court, therefore, is whether "substantial similarity" exists between the Hall and Ducote photographs. "In determining whether two works are substantially similar, the similarities shared cannot be attributable to generalized themes or ideas." *Evans,* 681 F.Supp. at 817 (citations omitted).

Plaintiff must show that an "average lay observer would recognize the copy as having been appropriated from the copyrighted work." *Evans,* 681 F.Supp. at 817 (citations omitted). "In making such a comparison, the works themselves supersede and control any contrary allegations of the parties." *Decorative Aides Corp. v. Staple Sewing Aides Corp.,* 497 F.Supp. 154, 157 (S.D.N.Y.1980).

### B. The Photographs

To this end, the Court turns its attention to the photographs. Each consists of a bedroom vignette featuring a mature couple. (Pl.Exs. B, C.) The couples are clothed in sleeping attire, namely bathrobes and pajamas. In each picture, the husband is serving his wife breakfast in bed on a wooden tray bearing a coffee cup, a croissant, and a bud vase.

Although Defendant's access to the Hall photograph is undisputed, the parties' relationship is nonetheless significant in deter-

mining whether the undeniable similarities between the photographs derived from independent interpretations of non-protectable expression or from impermissible copying of protectable expression. Defendant's photo editor, Christine Cancelli Szolkowski, initially contacted Plaintiff with a request for "very romantic, color photographs of mature men and women (fifty plus)." (Def.Mot.Ex. C.) Ms. Szolkowski's specifications concerned the overall tone or atmosphere of the photograph, rather than a particular scene or pose: "It can be outdoors ... or indoors.... Colors should be bright and cheerful; the feeling of the photos should be very warm, romantic, exciting and vigorous." (Def.Mot.Ex. C.)

Plaintiff complied by sending Ms. Szolkowski several photographs. Some of those, including the Hall photograph, were selected by Ms. Szolkowski to be shown to the Editor-in-Chief of New Choices, David Sendler, and its Art Director, Al Braverman. (Sendler Dep. at 28–30.) According to Mr. Sendler, the Hall photograph was deemed "not publishable by our standards." (Sendler Dep. at 31.) Specifically, "[t]he quality, the lighting was not good. The mood was not correct. The—it was—the whole feel was stark in its nature. It was—it was not a warm, romantic shot, by our standards." (Sendler Dep. at 31.) Ms. Szolkowski subsequently contacted Plaintiff in an unavailing attempt to obtain another photograph depicting a mature couple being served breakfast in bed. (Szolkowski Dep. at 30; Sendler Dep. at 34.) It was then collectively decided that New Choices would commission its own photograph.

New Choices personnel had several meetings with Kimberly Ducoté, a freelance photographer previously used by New Choices. (Sendler Dep. at 35–6; Szolkowski Dep. at 38.) Mr. Sendler and Ms. Szolkowski both testified that aside from being given the task of capturing a breakfast in bed scene, Ms. Ducote was given general instructions about the look and feeling sought. These included "warmth, and ... some styling instructions on curtains, flowers to be placed in a certain place, the kind of lighting we hoped to achieve; the overall effect we wished to get that would make this picture publishable." (Sendler Dep. at 37.) Ms. Szolkowski's recollection was that Mr. Sendler "might have said something about a bed tray and newspaper, flowers anything that conveys a romantic—I think it was more the feel of a romance between an older couple being rekindled. So flowers and romantic gestures." (Szolkowski Dep. at 45.)

No employee of New Choices was present at the photo shoot, which was conducted at a "bed and breakfast" scouted by Ms. Ducoté. (Sendler Dep. at 46; Szolkowski Dep. at 46.) Ms. Ducoté declared it "[her] understanding that [she] was retained to capture the scene using [her] photographic style and [her] creative eye." (Ducoté Decl. ¶ 7.)

The Court finds the doctrine of *scenes à faire* to be instructive in analyzing Plaintiff's claim of infringement. *Scenes à faire* are "events which naturally flow from a common theme." *Evans*, 681 F.Supp. at 817. They do not give rise to liability; " 'thematic concepts or scenes which necessarily must follow from certain similar plot situations' " are not protectable by copyright. *Evans*, 681 F.Supp. at 817 (quoting *Reyher v. Children's Television Workshop*, 533 F.2d 87, 88 (2nd Cir.1976)).

Plaintiff has submitted a list of twenty-five similarities purportedly shared by the Hall and Ducoté photographs. (Def.Mot.Ex. J.) These range from the obvious ("The man in our image is serving the woman breakfast in bed and the man in their image is serving the woman breakfast in bed.") to the technical ("Our image crops to a square and their image is used as a square.") Defendant does not dispute that certain similarities exist; rather, it terms some of them "unprotectible" and others "simply fictional." (Def.Supp.Reply at 2.)

Plaintiff's "listing of similarities does not alone generate an issue of material fact precluding summary judgment." *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). Some of the similarities of which Plaintiff complains inhere in the concept of breakfast being served in bed. For example, street clothing would be incongruous in a depiction of an intimate bedroom scene, as would the serving of a hamburger and french fries on a breakfast tray. (*See* Def.Mot.Ex. J. ¶¶ 4, 16, 17.) Nonetheless, the Court deems it significant that each husband offers

essentially the same menu and presentation: coffee and a croissant, accompanied by a red flower in a crystal bud vase and served on identical wooden trays. Moreover, there is sufficient similarity in the positioning and expressions of the couples that a trier of fact could find "substantial similarity" in the photographs.

The Court need not address every similarity upon which Plaintiff relies and Defendant disputes. Although the photographs supersede any contrary allegations of the parties, the Court finds the testimony and evidence submitted by the parties to comport with its determination that disputed issues of material fact remain as to whether the Ducoté photograph infringes on the Hall photograph.

In sum, the Court has not satisfied itself that no trier of fact could find the works to be "substantially similar." Defendant's motion for summary judgment should therefore be denied and the case proceed to trial.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, DENIED.

DONE and ORDERED.